*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

Nos. 18-CV-1257 & 19-CV-64

NICHOLAS ANTHONY CZAJKA, APPELLANT,

v.

HOLT GRAPHIC ARTS, INC., APPELLEE.

Appeals from the Superior Court
of the District of Columbia
(CAR-3673-18)

(Hon. William M. Jackson, Trial Judge)

(Submitted September 22, 2020                    Decided November 23, 2022)

*David H. Cox* and *Erica L. Litovitz* for appellant.

*Horace L. Bradshaw, Jr.* for appellee.

Before EASTERLY, MCLEESE, and DEAHL, *Associate Judges*.

Dissenting opinion by *Associate Judge* EASTERLY at page 27.

MCLEESE, *Associate Judge*: Appellee Holt Graphic Arts, Inc. (HGA) obtained a judgment in California, filed that judgment in the Superior Court of the District of Columbia, and then initiated the present action to enforce that judgment. Appellant Nicholas Anthony Czajka argues that the trial court should have dismissed

the action as barred by the statute of limitations. We affirm the trial court's denial of the motion to dismiss.

## I. Factual and Procedural Background

The following basic facts appear to be undisputed for current purposes. HGA obtained a judgment against Allen Wilson in California in 2001. HGA filed the California judgment in Superior Court in November 2006. HGA then began efforts in Superior Court to enforce that judgment, including by trying to force the judicial sale of a condominium owned by Mr. Wilson in the District of Columbia. Substantial additional litigation ensued, and no judicial sale occurred. Rather, Mr. Wilson passed away, and the personal representative of Mr. Wilson's estate sold the condominium to two purchasers who in turn sold the condominium to Mr. Czajka.

In May 2018, HGA filed the current action, seeking to judicially foreclose on the condominium in order to enforce the California judgment that had been filed in Superior Court. Mr. Czajka's predecessors in interest moved to dismiss the action, arguing among other things that the action was barred by the twelve-year statute of limitations applicable to the enforcement of judgments rendered by the Superior Court. D.C. Code § 15-101(a). HGA opposed the motion to dismiss, arguing among

other things that the twelve-year period did not begin to run until the California judgment was filed in Superior Court in November 2006.

The trial court agreed with HGA and denied the motion to dismiss. The trial court also granted summary judgment to HGA on the merits, directing that the condominium be sold and that the proceeds be applied to HGA's judgment.

## II. Analysis

On appeal, Mr. Czajka argues only that HGA's action was barred by the statute of limitations. We uphold the ruling of the trial court on that issue.

"We decide issues of statutory interpretation de novo." *In re G.D.L.*, 223 A.3d 100, 104 (D.C. 2020). "In interpreting statutory text, we first look to see whether the statutory language at issue is plain and admits of no more than one meaning." *Id.* (brackets and internal quotation marks omitted). We also "consider statutory context and structure, evident legislative purpose, and the potential consequences of adopting a given interpretation." *Id.*

## A. Statutory Text

The issue before the court turns on the interaction between two provisions. We have already mentioned the first: D.C. Code § 15-101(a). In pertinent part, that provision states,

> [E]very final judgment or final decree for the payment of money rendered in the . . . Superior Court of the District of Columbia, when filed and recorded in the office of the Recorder of Deeds of the District of Columbia, is enforceable, by execution issued thereon, for the period of twelve years only from the date when an execution might first be issued thereon . . . .

The second provision, D.C. Code § 15-352, governs the filing of foreign judgments. In pertinent part, that provision states, "A foreign judgment filed with the Clerk shall have the same effect and be subject to the same procedures, defenses, or proceedings for reopening, vacating, or staying as a judgment of the Superior Court and may be enforced or satisfied in the same manner." For purposes of that provision, a foreign judgment is "any judgment, decree, or order of a court of the United States or of any other court that is entitled to full faith and credit in the District." D.C. Code § 15-351(2). It is undisputed that the California judgment is a foreign judgment for purposes of § 15-352.

Mr. Czajka appears to read those two provisions in the following way. Under § 15-101(a), the twelve-year limitation period for a Superior Court judgment begins to run as of the date when "an execution might first be issued thereon." Once filed in Superior Court, a foreign judgment has the same effect as a Superior Court judgment, is subject to the same defenses, and is enforced in the same manner. D.C. Code § 15-352. The limitation period for enforcing a foreign judgment that has been filed in Superior Court therefore is twelve years from when the execution might have been had on the foreign judgment. Implicitly assuming that California law permits immediate execution on judgments, Mr. Czajka concludes that the twelve-year period began to run when the California judgment was entered in 2001. On that view, this action is untimely, because the action was filed in 2018.

HGA reads the provisions differently. HGA points out that an execution could not have been issued on the California judgment *in Superior Court* until the California judgment was filed in Superior Court. HGA emphasizes the language in § 15-352 stating that a registered foreign judgment has the same effect as a Superior Court judgment and may be enforced in the same manner. Although HGA does not fully lay out the steps in its reasoning, the theory seems to be the following: (1) the limitation period for a Superior Court judgment cannot begin until judgment has been entered in Superior Court; (2) foreign judgments should be treated in the same

way; and (3) the limitation period for foreign judgments thus cannot begin until the foreign judgment has been filed in Superior Court. On that theory, this action is timely, because the California judgment was filed in Superior Court in November 2006 and the action was filed in May 2018.

In a related but potentially distinct line of reasoning, HGA argues that the filing of the California judgment in Superior Court created a new judgment. On HGA's view, that new judgment would be enforceable for twelve years from the date of its entry. (Arguably, the new judgment would be enforceable for twelve years after the new judgment could be executed upon, rather than the date the new judgment was entered. *See* D.C. Code § 15-101(a); Super. Ct. Civ. R. 62(a) (judgments generally may not be executed upon until thirty days after entry).) The current action would also be timely under this line of reasoning.

Mr. Czajka and HGA each contend that their interpretation is compelled by the plain language of the provisions. We conclude instead that both proposed interpretations are facially plausible readings of the statutory language at issue. It is undisputed that a filed foreign judgment "shall have the same effect" as a Superior Court judgment. The question is whether that requires that the filed foreign judgment be treated like a Superior Court judgment entered on the date of the foreign

judgment or instead like a Superior Court judgment entered on the date the foreign judgment was filed in Superior Court. In our view, the text of sections 15-101(a) and 15-352 does not clearly answer that question. We therefore turn to other tools of statutory interpretation.

## B. Statutory Context, Structure, and History

### 1. D.C. Uniform Enforcement of Foreign Judgments Act

Section 15-352 was enacted in 1990, as part of the District of Columbia Uniform Enforcement of Foreign Judgments Act (DC UEFJA). D.C. Law 8-173, § 2(b), 37 D.C. Reg. 6561 (Oct. 19, 1990). The DC UEFJA is closely modeled on the Revised Uniform Enforcement of Foreign Judgments Act of 1964 (RUEFJA). Unif. Enf't of Foreign Judgments Act, Revised 1964 Act, 13 pt. 1 U.L.A. 155-245 (2002); *see* The Uniform Enforcement of Foreign Judgments Act of 1990, D.C. Council, Report on Bill 8-56 at 2 (June 20, 1990). Section 15-352 is almost identical to § 2 of the RUEFJA, with some minor wording changes to tailor the provision to the Superior Court. 13 pt. 1 U.LA. at 163. Also, one sentence from the RUEFJA was not included in § 15-352. *See* 13 pt. 1 U.L.A. 163 ("The Clerk shall treat the foreign judgment in the same manner as a judgment of the [District Court of any city

or county] of this state.") (brackets in original). The committee report makes clear that the DC UEFJA was intended to be substantially identical to the RUEFJA. *See* Report on Bill 8-56 at 2 (stressing need for uniformity among states and describing Bill 8-56 as having been adopted in thirty-nine states); *see also id.* at 4 (witness describes Bill 8-56 as "almost identical" to RUEFJA); *id.* attach. 3 at 4-5 (witness describes Bill 8-56 as "substantially identical" to RUEFJA, with changes "of a technical or grammatical nature"). When it enacted the DC UEFJA, the D.C. Council explicitly directed the courts to interpret the DC UEFJA "to effectuate its general purpose to make uniform the law of jurisdictions that enact" the RUEFJA. D.C. Code § 15-357; *see also Nader v. Serody*, 43 A.3d 327, 333 (D.C. 2012) ("The UEFJ[A]'s general purpose is to obtain uniformity with the rulings of [other] state courts.") (internal quotation marks omitted).

The committee report on the DC UEFJA does not directly address the issue in this case. The report explains generally that the purpose of the DC UEFJA is to "provide an expeditious and simple procedure to enforce foreign judgments in courts of the District of Columbia." Report on Bill 8-56 at 2. The report also states that "[t]he act of filing the foreign judgment gives it the effect of being a judgment of the court in the state in which it is filed, thereby eliminating the need for another trial." *Id.*

## 2. State Decisions

This court has not squarely addressed the issue before us in this case. We therefore look for guidance from the decisions of state courts that have enacted the RUEFJA. Unfortunately, state courts have not reached consistent conclusions about the interaction between their statutes of limitations and provisions the same as, or similar to, section 2 of the RUEFJA. It appears, however, that the substantial weight of authority holds that the filing of a foreign judgment triggers a new limitation period. *See, e.g.*, *Hanley Eng'g, Inc. v. Weitz & Co.*, 321 Or. App. 323, 328-29 (2022) (statute of limitations began to run on date judgment was filed in new state, not on date judgment was originally entered); *Flangas v. Perfekt Mktg., LLC*, 507 P.3d 574, 578 (Nev. 2022) (same); *Nielson v. Schmoke*, 863 S.E.2d 652, 660-66 (N.C. Ct. App. 2021) (same; citing numerous cases, including decisions from Maryland, New Jersey, and Louisiana); *Ware v. Everest Grp., L.L.C.*, 238 S.W.3d 855, 863-64 (Tex. App. 2007) (same); *Logemann Holding, Inc. v. Lieber*, 793 N.E.2d 135, 136-139 (Ill. App. Ct. 2003) (same); *Potomac Leasing Co. v. Dasco Tech. Corp.*, 10 P.3d 972, 975 n.2 (Utah 2000) (same); *Drllevich Constr., Inc. v. Stock*, 958 P.2d 1277, 1279-81 (Okla. 1998) (same; citing numerous cases, including decisions from New Mexico, New York, South Carolina, and Kansas); *Walnut Grove Prods. v. Schnell*, 659 S.W.2d 6, 7 (Mo. Ct. App. 1983) (same). *But see Alpha*

*Mortg. Fund II v. Drinkard*, 497 P.3d 200, 206 (Idaho 2021) ("[T]he limitations period begins to run from the date the judgment is entered or last renewed in the rendering state.") (internal quotation marks and emphasis omitted); *Boudette v. Boudette*, 453 P.3d 893, 897 (Mont. 2019) (same); *Wells Fargo Bank, Nat'l Ass'n v. Kopfman*, 226 P.3d 1068, 1071-72 (Colo. 2010) (same); *Corzo Trucking Corp. v. West*, 636 S.E.2d 39, 40-41 (Ga. Ct. App. 2006) (same); *Michael v. Valley Trucking Co.*, 832 So. 2d 213, 217 (Fla. Dist. Ct. App. 2002) (same).

As previously noted, the D.C. Council has directed us to construe the DC UEFJA in favor of uniformity. D.C. Code § 15-357. Although state courts have not reached consistent decisions, we think that considerations of uniformity argue in favor of adopting the approach that appears to be much more broadly followed in the states.

### 3. Federal Law

The RUEFJA was explicitly modeled on a federal statute, 28 U.S.C. § 1963. *See* 13 Pt. 1 U.L.A. 156-57 (citing § 1963 and stating that RUEFJA "adopts the practice which, in substance, is used in Federal courts"). Section 1963 addresses an analogous issue—registration of judgments from one federal court in another federal

court—and its pertinent language is very similar to that of both § 2 of the RUEFJA and D.C. Code § 15-352. *See* 28 U.S.C. § 1963 ("A judgment so registered shall have the same effect as a judgment of the district court of the district where registered and may be enforced in like manner."). It appears that every federal court of appeals that has decided the issue has held that registration of a judgment in a new district court pursuant to § 1963 triggers a new limitation period for the enforcement of the judgment, measured from the date of registration rather from the date of the original issuance of the underlying judgment. *See, e.g.*, *Wells Fargo Equip. Fin., Inc. v. Asterbadi*, 841 F.3d 237, 243-46 (4th Cir. 2016) (citing cases from the Fifth, Eighth, and Ninth Circuits).

We find those federal decisions very persuasive. *See, e.g., Nielson*, 863 S.E.2d at 658 ("Given the similarities between 28 U.S.C. § 1963 and North Carolina's UEFJA, the analysis employed by the Fourth Circuit in *Asterbadi* is highly persuasive and equally employable to this case."); *see also Baker v. Gen. Motors Corp.*, 522 U.S. 222, 235 n.8 (1998) (describing RUEFJA and 28 U.S.C. § 1963 as "similar").

## 4. Broader Context

Before the enactment of the DC UEFJA, foreign judgments were enforced in Superior Court by filing a civil action seeking to obtain a Superior Court judgment. *See, e.g.*, *Amos v. Shelton*, 497 A.2d 1082, 1084 (D.C. 1985) (party seeking to enforce Pennsylvania judgment filed action in Superior Court seeking Superior Court judgment); Report on Bill 8-56 at 4-5 (summarizing testimony indicating that under current law party seeking to enforce foreign judgment was required to file civil action). The result of that civil action, if successful, was a Superior Court order entering judgment against the debtor. *Amos*, 497 A.2d at 1085-86.

A party who obtains a Superior Court judgment based on a foreign judgment would then apparently have an additional twelve years to enforce that Superior Court judgment. D.C. Code § 15-101(a) (for judgments rendered in the Superior Court, providing twelve-year limitation period beginning "when an execution might first be issued thereon"). Although we have not found decisions from this jurisdiction applying § 15-101(a) in that context, it appears to be well settled that obtaining a new judgment based on earlier judgment triggers a new limitation period within the new judgment may be enforced. *See, e.g.*, Restatement (Second) of Judgments § 18, cmt. c (Am. L. Inst.1982) (obtaining new judgment in action upon judgment restarts

statute of limitations); *H & E Equip. Servs., Inc. v. Cassani Elec., Inc.*, 169 A.3d 1308, 1312 (Vt. 2017) (same); *Galef v. Buena Vista Dairy*, 875 P.2d 1132, 1135 (N.M. Ct. App. 1994) (1989 judgment in New Mexico on action to enforce 1977 California judgment "converted the 1977 California judgment into a separate New Mexico judgment, with applicable New Mexico statutes of limitations to be measured from 1989").

The common law of other jurisdictions also required the filing of a full-blown civil action to establish a foreign judgment. *See, e.g.*, Restatement (Second) of Judgments § 8 cmt. d (Am. L. Inst. 1982) ("[I]n the absence of legislation[,] the judgment of one state is not immediately enforceable by executive action in [another] state. Instead, the judgment must first be made a judgment in the state where it is to be enforced. This is done by bringing an action on the judgment in that state or, if statute permits, by registering it with an appropriate court in the state."); 30 Am. Jur. 2d *Executions* § 580 (2022) ("At common law, a judgment rendered by a court of [another] state may not be enforced without the institution of an action based thereon and the recovery of a judgment in such action. An action based on a judgment entered in [another] state is considered a new and independent action . . . .") (footnote omitted). Dissatisfaction with the cumbersome nature of that approach led to the RUEFJA, which was intended to promote efficiency and reduce

the burden on state courts by creating a "speedy and economical method" of recognizing foreign judgments. *See* 13 Pt. 1 U.L.A. 157.

The RUEFJA did not displace the older, more cumbersome way of making a foreign judgment enforceable. Rather, § 6 of the RUEFJA, entitled "Optional Procedure," provides that "[t]he right of a judgment creditor to bring an action to enforce [the] judgment instead of proceeding under this Act remains unimpaired." 13 Pt. 1 U.L.A. 243. The DC UEFJA provides the same, in virtually identical language. D.C. Code § 15-356.

This broader context is relevant in three related ways. First, under the law before the RUEFJA, establishing a foreign judgment generally triggered a new limitation period. The RUEFJA and the DC UEFJA were intended to streamline the process of establishing foreign judgments. There is no suggestion in the history of either provision that the provisions were intended to take the significant and distinct step of reducing the time within which foreign judgments could be enforced in a new state. *Cf., e.g.*, *Jones v. United States*, 526 U.S. 227, 234 (1999) (noting "fair assumption that Congress is unlikely to intend any radical departures from past practice without making a point of saying so"). In fact, it is quite clear that the drafters of the RUEFJA and the DC UEFJA had no intent to reduce the time within

which foreign judgments could be enforced, because they left the common-law practice in place as an alternative.

Second, Mr. Czajka has provided no reason, and we see no reason, why the drafters of the RUEFJA and the DC UEFJA would want different limitation periods to apply depending on whether a party established a foreign judgment using the common-law approach or a more streamlined approach. *See, e.g.*, *Alexander Constr. Co. v. Weaver*, 594 P.2d 248, 250 (Kan. Ct. App. 1979) ("The Uniform Enforcement of Foreign Judgments Act was instituted to provide a more effective and efficient time-saving procedure for the enforcement of judgments obtained in foreign jurisdictions. Our adoption of this Act does not extinguish the judgment creditor's right to bring or file an action to enforce [a] foreign judgment in this state. It is merely another method available to the judgment creditor. The statute of limitations applicable to enforcement of a foreign judgment in Kansas should be the same regardless of which of these methods of enforcement is chosen by the judgment creditor.") (citation omitted).

Third, the common-law procedure sheds light on how best to understand the language in § 15-352 providing that a foreign judgment filed in Superior Court "shall have the same effect . . . as a judgment of the Superior Court." In essence, Mr.

Czajka's theory is that a foreign judgment filed in Superior Court should be given the same effect as a hypothetical Superior Court judgment entered on the same date that the foreign judgment was entered. The foregoing discussion suggests that it makes more sense to consider a different hypothetical Superior Court judgment: the judgment that would have been entered if the more cumbersome common-law procedure had been followed. As we have explained, such a judgment triggers a new limitation period. The text of § 15-352 can quite reasonably be read to require that filed foreign judgments be given the same effect.

### 5.  Mr. Czajka's Arguments

Taken together, the foregoing considerations persuade us that the filing of a foreign judgment in Superior Court triggers a new twelve-year limitation period, measured from the date on which the filed foreign judgment could thereafter be enforced in Superior Court. Mr. Czajka makes two additional arguments in support of the contrary conclusion, but we are not convinced by them.

Mr. Czajka argues that parties filing a foreign judgment in Superior Court should not be better off than parties who have judgments initially entered in Superior Court. We are not convinced by that argument for several reasons. First, providing

for longer overall limitation periods in cases involving interstate efforts to enforce judgments does not seem unreasonable. Second, parties with Superior Court judgments may well benefit from that approach if they need to enforce their judgments in foreign jurisdictions. Third, parties with Superior Court judgments have the ability to seek to extend the limitation period if necessary, by filing a motion to revive the judgment. *See* D.C. Code § 15-103 (permitting extension of limitation period to enforce judgment for additional twelve years). *See generally Nat'l Bank of Washington v. Carr*, 829 A.2d 942, 945 (D.C. 2003) ("If appellees offer no other defense or cause why the judgment should not be revived, the trial court should grant appellant's motion to revive the judgment."). Finally, as we have previously explained, parties with foreign judgments are in any event able to trigger a new limitation period for enforcement of the judgment in the District of Columbia if they choose to proceed by filing an action under the common-law procedure preserved by D.C. Code § 15-356.

Mr. Czajka also suggests that permitting foreign judgments filed in Superior Court to trigger a new limitation period would result in unreasonably long periods within which parties could enforce judgments. We agree with the Fourth Circuit's response to a similar argument:

> Finally, Asterbadi proposed during oral argument numerous horribles that he envisions will result from the fact that creditors will be able repeatedly to restart a statute of limitations through the simple act of registration, defeating any purpose for the limitation. The posited consequences, however, are no different than have always existed under the more burdensome process of suing on an original judgment to obtain a new judgment in the enforcement jurisdiction. When the new judgment was entered, it carried with it the limitations period then applicable to judgments in the State of entry. Moreover, creditors in many States—including in Maryland—are also able to renew existing judgments indefinitely and thus extend enforcement with new limitations periods without any adversarial process.

*Asterbadi*, 841 F.3d at 246. We also note that Mr. Czajka has not provided support for the idea that such abuses have arisen in the federal courts or in the numerous states that follow the rule that we adopt today.

## 6. Response to the Dissent

The dissent concludes that the statute of limitations began to run in this case on the date that the California judgment was issued. *Infra* at 31-33. Our reasoning differs from that of the dissent in a number of respects.

**i.**

The dissent takes the view that a foreign judgment filed under D.C. Code § 15-352 does not "*become*[]" a Superior Court judgment. *Infra* at 29. As the dissent acknowledges, *id.*, however, such a foreign judgment must "have the same effect and be subject to the same procedures, defenses, or proceedings for reopening, vacating, or staying as a judgment of the Superior Court and may be enforced or satisfied in the same manner." D.C. Code § 15-352. In other words, a foreign judgment filed under § 15-352 must be treated just the same as if it is a Superior Court judgment. Whether such a foreign judgment in some sense actually "becomes" a Superior Court judgment seems rather metaphysical. Whatever the answer to that question, § 15-352 requires that filed foreign judgments be given the same effect as Superior Court judgments, which contradicts the dissent's conclusion that this distinction should be treated as having "real world consequences." *Infra* at 30.

**ii.**

The dissent repeatedly states that the conclusion it reaches is dictated by the plain language of §§ 15-101(a) and 15-352. *E.g.*, *infra* at 29-33. We disagree. First,

the plain language of those provisions does not clearly indicate whether a filed foreign judgment in some sense "becomes" a Superior Court judgment, which is illustrated by the numerous decisions holding that filed foreign judgments do become judgments of the court in which they are filed. *E.g., Hanley Eng'g*, 321 Or. App. at 328. Second, assuming that the dissent is correct that a filed foreign judgment does not "become" a Superior Court judgment, we need to determine precisely how to give a filed foreign judgment the "same effect" as a Superior Court judgment. The plain language of §§ 15-101(a) and 15-352 does not tell us whether to treat that filed foreign judgment as a hypothetical Superior Court judgment entered on the same date that the foreign judgment was entered or as a hypothetical Superior Court judgment entered on a date that the foreign judgment was filed.

**iii.**

The dissent expresses the view that if filed foreign judgments have the same effect as Superior Court judgments, then the prior method of establishing a foreign judgment by initiating a civil action in Superior Court will be superfluous. *Infra* at 35-36. As the dissent points out, *id.* at 31, the DC UEFJA explicitly preserved the latter method. D.C. Code § 15-356 ("Optional Procedure. The right of a judgment creditor to bring an action to enforce a judgment in lieu of a proceeding under [the

DC UEFJA] remains unimpaired."). The dissent's point here rests entirely on the assumption that the only reason a creditor would file a civil action rather than filing the judgment under the DC UEFJA is to get the benefit of a longer enforcement period. *Infra* at 31. The dissent provides no support for that assumption, and the assumption is not obviously correct. It is true that § 15-352's filing procedure was intended to be "expeditious." Report on Bill 8-56 at 2. But it does not necessarily follow that creditors would never have occasion to prefer the more extensive procedures available under the optional procedure retained in § 15-356. In fact, it appears that creditors do sometimes continue to use the latter procedure. *See, e.g.*, *Tipton v. State ex rel. Lottery Comm'n*, No. 03-21-00133-CV, 2022 WL 3722389, at \*2 (Tex. App. Aug. 30, 2022) (State of Oklahoma chose to enforce Iowa judgment in Texas through common-law enforcement action rather than under Texas UEFJA); *Joseph C. Sansone Co. v. Woodland St., LLC*, No. CV-20-6131647, 2022 WL 1179803, at \*2 (Conn. Super. Ct. Apr. 12, 2022) (creditor chose to enforce Missouri judgment in Connecticut through common-law enforcement action rather than under Connecticut UEFJA); *GreatAmerica Fin. Servs. Corp. v. Lillington Fam. Chiropractic, PA*, 791 S.E.2d 663 (Table), at \*\*3 (N.C. Ct. App. 2016) (creditor permissibly brought independent action in North Carolina to enforce Iowa judgment rather than registering foreign judgment under UEFJA). The dissent hypothesizes that the creditor in the last of these three cases might have been concerned about the

running of the statute of limitations and therefore might have filed a common-law action in the hope of obtaining a potentially longer limitations period. *Infra* at 36 n.6. Nothing in the opinion supports that hypothesis. *GreatAmerica*, 791 S.E.2d 663, at **1-3. The hypothesis seems implausible, moreover, given that the action to enforce the judgment in that case was filed less than four years after entry of the foreign judgment. *See id.* at **1; *see also* N.C. Gen. Stat. Ann. § 1-47(1) (West 2019) (ten-year statute of limitations for enforcing foreign judgment); *id.* § 1-306 (West 2019) (same for enforcing domestic money judgment).

In any event, the dissent in our view gives undue weight to the possibility of superfluity. There is a significant preference for giving all of the words in a provision independent effect, but that is not a flat requirement. *See, e.g.*, *Rotunda v. Marriott Int'l, Inc.*, 123 A.3d 980, 988-89 (D.C. 2015) ("The canon against surplusage is not an absolute rule . . . .") (internal quotation marks omitted); *Lamie v. U.S. Tr.*, 540 U.S. 526, 536 (2004) ("[O]ur preference for avoiding surplusage constructions is not absolute."); *District of Columbia v. Jerry M.*, 717 A.2d 866, 871 (D.C. 1998) (The presumption against redundancy, "while properly a part of the court's interpretive calculus, is not dispositive of the case."). In particular, the presumption against surplusage ordinarily must yield to the plain language of a provision. *Lamie*, 540 U.S. at 536. In our view, the dissent overlooks this limitation,

by relying on the preference against superfluity to conclude that § 15-352 cannot mean what it says when it provides that filed foreign judgments are to be treated the same as Superior Court judgments.

**iv.**

The dissent states that, under the interpretation we adopt, creditors could enforce foreign judgments that are expired in their state of origin. *Infra* at 38-40. The question whether an expired foreign judgment can be enforced under the DC UEFJA is not raised by the facts of this case, and we express no view on the matter. We note, however, that at least one court has held that neither the Full Faith and Credit Clause nor that state's version of the UEFJA "requires registration of a foreign judgment that no longer has any effect in the state that originally produced the judgment." *Muka v. Horizon Fin. Corp.*, 766 So. 2d 239, 240 (Fla. Dist. Ct. App. 2000); *see* D.C. Code § 15-351(2) (defining "foreign judgment" for purposes of DC UEFJA as "any judgment, decree, or order of a court of the United States or of any other court that is entitled to full faith and credit in the District"); *cf. Del Prado v. B. N. Dev. Co.*, 602 F.3d 660, 664 (5th Cir. 2010) (under 28 U.S.C. § 1963, judgment that has expired in issuing state may not be registered).

We also note that we do not view it as self-evident that D.C. Code § 12-307 has no possible relevance to the issue. That provision appears to require that an action to enforce a foreign judgment be initiated before the judgment becomes unenforceable in the issuing state. *Id.* ("An action upon a judgment or decree rendered in a State, territory, commonwealth or possession of the United States . . . is barred if by the laws of that jurisdiction, the action would there be barred and the judgment or decree would be incapable of being otherwise enforced there."). Some courts have treated the filing of a foreign judgment under the UEFJA as an "action" for purposes of applying a statute of limitations. *E.g.*, *Lawrence Sys., Inc. v. Superior Feeders, Inc.*, 880 S.W.2d 203, 207-08 (Tex. App. 1994). Other courts have disagreed. *E.g.*, *Deuth v. Ratigan*, 590 N.W.2d 366, 372-73 (Neb. 1999) (citing cases on both sides of issue). On the former approach, § 12-307 would require that a foreign judgment be filed in Superior Court within the limitation period of the issuing state. Then, § 15-101(a) would provide a twelve-year period for enforcement of the filed judgment. To reiterate, however, we need not and do not express a view as to the correctness of that approach.

The dissent suggests that there is no procedural mechanism to challenge a filed foreign judgment, *infra* at 38-40, but that is not the case. It is true that the filing of the foreign judgment is an administrative act, but the DC UEFJA explicitly

provides that filed foreign judgments are subject to the same procedures and defenses as Superior Court judgments. D.C. Code § 15-352. Such defenses, including a claim that the foreign judgment is expired or time-barred, could be brought by way of motion, as in this case, or through any other procedure that would available to challenge a Superior Court judgment.

We also note that the approach favored by the dissent appears to permit foreign creditors use the DC UEFJA to enforce expired foreign judgments. Under the dissent's approach, a foreign judgment can be enforced in the District of Columbia for twelve years after the judgment could have been enforced in the issuing state. *Infra* at 34-35. Consider, for example, a North Carolina judgment entered eleven years ago. That judgment would be expired under North Carolina law. *See* N.C. Gen. Stat. Ann. § 1-306 (West 2019) (ten-year statute of limitations for enforcing domestic money judgment). Under the dissent's approach, however, that expired judgment apparently would be enforceable in the District of Columbia for another year. That consequence is particularly peculiar, because (as previously noted) the common-law action to enforce a judgment apparently does not permit an action to be filed to enforce an expired foreign judgment. D.C. Code § 12-307 ("An action upon a judgment or decree rendered in a State, territory, commonwealth or possession of the United States . . . is barred if by the laws of that jurisdiction, the

action would there be barred and the judgment or decree would be incapable of being otherwise enforced there.").  The dissent thus seems to contemplate according more favorable treatment to expired judgments filed under the DC UEFJA than to expired judgments that a creditor seeks to enforce through an action on a judgment.

The dissent disputes that expired foreign judgments could be enforced under its approach.  *Infra* at 41 n.11.  The dissent suggests that, under its view, a debtor could prevent the enforcement of an expired foreign judgment by relying on D.C. Code § 15-101, which starts the limitation period on the date when the foreign judgment could have been enforced in the issuing jurisdiction.  *Id.*  That provision, however, does not solve the problem.  Section 15-101 provides a twelve-year period for enforcement, measured from that starting point.  If, as in the example above, the foreign jurisdiction has a shorter limitations period for enforcement of its judgments, then § 15-101 would permit enforcement of an expired foreign judgment.

**v.**

Finally, the dissent contends that the legislative history of the RUEFJA and the DC UEFJA "contain[] no mention of a desire to give new temporal life to foreign judgments."  *Infra* at 47.  In our view, that contention starts from an incorrect

premise. The preexisting common-law procedure gave new temporal life to foreign judgments once those judgments were established in another state. The RUEFJA and the DC UEFJA were intended simply to streamline that process, and there is no indication that they were intended to shorten the time frame for enforcing foreign judgments.

For the foregoing reasons, the judgment of the Superior Court is affirmed.

*So ordered.*

EASTERLY, *Associate Judge*, dissenting: This case concerns the enforceability of an asserted statutory lien on real property that arose from a 2001 California money judgment against Allen Wilson, a former owner of the property.[1] Holt Graphic Arts filed the California judgment in November 2006 with the Office of the Clerk of the Superior Court of the District of Columbia, pursuant to D.C. Code § 15-352, part of the District's Uniform Enforcement of Foreign Judgments Act ("D.C. UEFJA").

---

[1] *See* D.C. Code §§ 15-102(a)(1) to (a)(2) (providing that a judgment "for the payment of money rendered" in the District's federal or local courts gives rise to "a lien on all . . . freehold and leasehold estates" "from the date such judgment . . . is filed and recorded in the office of the Recorder of Deeds of the District of Columbia").

The question before us is whether this judgment expired in 2013 before Mr. Wilson's estate sold the property to new owners (who then sold the property to appellant Nicholas Anthony Czajka) and before HGA sought to foreclose on the property and force its sale in May 2018.

D.C. Code § 15-352 allows foreign judgments to be filed with the Superior Court Clerk's Office and requires that filed foreign judgments have "the same effect and be subject to the same procedures" as a D.C. judgment. Pursuant to D.C. Code § 15-352, the trial court applied the 12-year period for enforcement of a judgment in the District, D.C. Code § 15-101(a), but it calculated the date of enforceability from the date the California judgment was filed in the D.C. Superior Court Clerk's Office in 2006, not—as one would do looking at a D.C. judgment—the date the California judgment initially came to life. Thus the trial court concluded that the California judgment, which was initially entered by a court in 2001, was still a live judgment 17 years later when HGA initiated its foreclosure action in 2018.

My colleagues in the majority conclude that D.C. Code § 15-352 and D.C. Code § 15-101(a) read together are ambiguous and so look to other sources to conclude these statutes are most reasonably interpreted to support the trial court's ruling. By contrast, I understand these statutes to have a plain-language meaning

that fulfills the geographic reciprocity goals of the Full Faith and Credit Clause and the UEFJA, but still tethers a foreign judgment to its date of enforceability in its originating jurisdiction; does not allow that judgment to be reborn and then enforced as a new D.C. judgment (literally or effectively) simply by virtue of being filed in the Superior Court Clerk's Office; and does not lead, as the majority opinion's rule would, to incongruous outcomes like the enforcement of expired-when-filed foreign judgments in the District of Columbia.

## I. The Statutory Text

### A. The Plain Language of § 15-352 and § 15-101(a)

D.C. Code § 15-352 provides in its first sentence that "[a] copy of any [properly authenticated] foreign judgment" may be filed with the Superior Court Clerk's Office and then states in its second sentence that "[a] foreign judgment [so] filed . . . shall have the same effect and be subject to the same procedures, defenses, or proceedings for reopening, vacating, or staying as a judgment of the Superior Court and may be enforced or satisfied in the same manner." The statute does not say that, upon filing with the Clerk, a foreign judgment *becomes* a judgment of the Superior Court of the District of Columbia. This textual distinction has interpretive

import and real world consequences.

A "foreign judgment" is statutorily defined to exclude a judgment issued by District of Columbia courts.[2] And under the D.C. UEFJA, a judgment by a foreign court remains a "foreign judgment" even after it is filed in D.C. pursuant to D.C. Code § 15-352.[3] Section 15-354, for example, expressly ties the enforceability of a filed "foreign judgment" back to its status in its jurisdiction of origin: this provision authorizes the Superior Court to "stay enforcement of the foreign judgment" in the District of Columbia upon proof that the debtor has "furnished the security for the satisfaction of the judgment required by the state in which the judgment is rendered," and that the debtor has a pending "appeal from the foreign judgment" or intends to take such an appeal, or if "a stay of execution has been granted" in the jurisdiction of origin. *Id.*

The plain-language understanding that a foreign judgment remains a foreign judgment even after filing under D.C. Code § 15-352 distinguishes this method of

---

[2] D.C. Code § 15-351 (defining a "foreign judgment" as "any judgment, decree, or order of a court of the United States or of any other court that is entitled to full faith and credit in the District").

[3] *See, e.g.*, D.C. Code § 15-353 (addressing the notice that must be provided after a foreign judgment has been filed); *id.* § 15-354 (addressing the process for obtaining a stay of the filed foreign judgment).

obtaining recognition of foreign court judgments from another method authorized in another provision of the D.C. UEFJA, D.C. Code § 15-356.  Section 15-356 preserves the common-law method of converting a foreign judgment into a D.C. judgment: bringing an action in Superior Court.  *Id.* ("The right of a judgment creditor to bring an action to enforce a judgment in lieu of proceeding under this subchapter remains unimpaired.").  This older common-law method is "cumbersome," *see* Comment, Super. Ct. Civ. R. 62-III, because it requires the initiation of a plenary proceeding at which the creditor as plaintiff bears the burden of proof and a debtor has the opportunity to raise defenses prior to D.C. courts recognizing and enforcing the foreign judgment.  *See, e.g.*, *Fowler v. Pilson*, 123 F.2d 918 (D.C. Cir. 1941) (successfully arguing that the foreign judgment had expired and so could not be enforced in D.C. under the predecessor to D.C. Code § 12-307); *Fehr v. McHugh*, 413 A.2d 1285 (D.C. 1980) (recognizing a foreign judgment in a common-law action and rejecting the defense that the judgment was not yet final).  Indeed, the cumbersomeness of the common-law method prompted the creation of the more streamlined filing method, see *infra* Part II.  But the upside to this more time-consuming and presumably more expensive common-law method is that the creditor who prevails emerges with a new D.C. judgment.

Accepting that a foreign judgment filed under D.C. Code § 15-352 is merely

recognized as a foreign judgment that a creditor may seek to enforce in the District, and is not converted to a D.C. judgment by the act of filing, the question then becomes what it means to give a foreign judgment the "same effect" as a D.C. judgment under D.C. Code § 15-352 with regard to enforceability. A D.C. judgment is, pursuant to D.C. Code § 15-101(a), enforceable for 12 years. The statute notes that the final judgment should be "filed and recorded with the Recorder of Deeds of the District of Columbia." *Id.* But the length of time for enforceability for a D.C. judgment does not run from that administrative event. Rather, D.C. Code § 15-101(a) provides, in pertinent part, that a judgment "is enforceable . . . for the period of twelve years only from the date *when an execution might first be issued thereon,*" *see id.* (emphasis added), a clock that starts ticking whether or not—and regardless of when—a judgment is submitted to and accepted by the Recorder of Deeds,[4] *see Lomax v. Spriggs*, 404 A.2d 943, 949 (D.C. 1979) ("The life of recorded and unrecorded judgments is equal: twelve years from when execution might first have issued."). In other words, D.C. Code § 15-101(a) ties the initial date of the enforcement period to the date of the judgment's issuance by a court, subject to the

---

[4] The statute also provides that a judgment "is enforceable . . . from the date of the last order of revival thereof." D.C. Code § 15-101(a). Revival, however, requires a court order and must be sought before expiration of the judgment. *See* D.C. Code § 15-103 (authorizing revival before expiration); *see also* D.C. Code § 15-101(b) (disallowing revival attempts post-expiration).

operation of any rule-based or court-ordered stay.[5]

Thus, to follow the command of § 15-352 and subject a filed foreign judgment "to the same procedures" and enforce it "in the same manner" to give it the "same effect" as a D.C. judgment, we should, per § 15-101(a), calculate a judgment's enforceability not from its date of filing (again a purely administrative event), but from the date "when an execution might first be issued thereon" in its original issuing jurisdiction. For the 2001 California judgment at issue in this case, that means we should calculate its enforceability from 2001. And if we did so, it would be apparent that the judgment expired in 2013, well before HGA commenced enforcement action in this case.

**B. The Illogical Implications of My Colleagues' Alternate Interpretation of § 15-352 and § 15-101(a)**

My colleagues in the majority accept that my plain-language reading of

---

[5] *See, e.g.*, Super. Ct. Civ. R. 62(a) (generally staying Superior Court judgments for 30 days); *see also Lomax*, 404 A.2d at 954 (holding that a party's actual immunity from the effects of any executed judgment did not delay the commencement of the 12-year clock and that "the life of a judgment may be ascertained by regarding the record and the provisions of law concerning execution and stays of execution").

§ 15-352 and § 15-101(a) is "plausible." *Ante* at 6. But they also accept appellee's interpretation of these statutes to restart the 12-year enforcement clock upon filing a foreign judgment with the Superior Court Clerk's Office as equally plausible and more reasonable. I disagree. Whereas my interpretation of these statutes makes textual sense and fulfills the geographic reciprocity objectives of § 15-352 and the Full Faith and Credit Clause, see *infra* Part II, the majority opinion's interpretation produces incongruous results that contravene the plain-language directive of § 15-352 to subject a foreign judgment to the "same procedures" and give it the "same effect" as a D.C. judgment under § 15-101(a). Indeed, its interpretation appears to guarantee preferential temporal treatment—wholly unwarranted under the Full Faith and Credit Clause—to a foreign judgment.

To recap, under my plain-language understanding of the D.C. UEFJA, the two methods a creditor can use to seek recognition of a foreign judgment in the District in order to enforce it lead to different results. Under the old common-law method, preserved in D.C. Code § 15-356, a creditor may bring a plenary proceeding to convert a foreign judgment into a D.C. judgment, at which time the enforceability of the foreign judgment in D.C. is litigated. A creditor who prevails at such a proceeding gets a new D.C. judgment with an attendant 12 years of enforcement for that new judgment under D.C. Code § 15-101(a). Under the new streamlined filing

method, the procedural burden on the creditor is far less. All a creditor has to do to obtain recognition is file the foreign judgment with the Superior Court Clerk's office along with a two-page form. *See infra*. With the ease of the procedure, however, a creditor gets less in the way of the enforceability. Assuming the judgment is still live at the time of filing, see *infra* note 11, the District's 12-year statute of limitations under § 15-101(a) runs from the date of the foreign judgment's issuance in its originating jurisdiction, subject to rule-based or court-ordered stays (as contemplated by § 15-354).

Contrast this with the conception of §§ 15-352 and 15-101(a) that my colleagues endorse.

First, the cumbersome common-law method of obtaining recognition of a foreign judgment and the streamlined filing method produce precisely the same result: a new 12-year period of enforcement of the judgment in the District. That alone is logically odd—a creditor can put in less effort to get the same benefit. But it also contradicts the statutory text. It treats a filed foreign judgment as if it were converted into a D.C. judgment under § 15-356, even though the D.C. UEFJA expressly regards a filed foreign judgment as a foreign judgment after filing. See *supra* note 3 and accompanying text. Relatedly, it contravenes "the basic principle

of statutory interpretation" that a statute should not be construed in a manner that renders any of its provisions superfluous. *Animal Legal Def. Fund v. Hormel Foods Corp.*, 258 A.3d 174, 183-84 (D.C. 2021) (internal quotation marks omitted) (declining to interpret a statute in a manner such that "it would never make sense" for litigants to proceed under one more cumbersome provision because they could "sidestep those additional barriers" by proceeding under another).[6]

Further, the majority opinion's conception of the statutes disregards the

---

[6] My colleagues in the majority assert that creditors in other jurisdictions still use the cumbersome common-law method even though they have a filing alternative available to them. But the idea behind superfluity as a tool of statutory interpretation is that the legislature intends each part of the statute to serve an "independent function." *Animal Legal Def. Fund*, 258 A.3d at 183. Thus how a few individual creditors have chosen to enforce foreign judgments under other state UEFJAs is not the relevant inquiry.

In any event, these examples do not prove the majority opinion's point that creditors generally still see some benefit in continuing to use the more cumbersome common-law method to obtain recognition of a foreign judgment even if they could use the simplified filing method under their state's UEFJA to obtain the same statute of limitations. For example, the creditor in *GreatAmerica Financial Services Corp. v. Lillington Family Chiropractic, PA*, 791 S.E.2d 663 (Table), at *3 (N.C. Ct. App. 2016), filed a common law action *before* the same intermediate appellate court held that the filing of a foreign judgment in North Carolina would restart the statute of limitations in *Nielson v. Schmoke*, 863 S.E.2d 652 (N.C. Ct. App. 2021), that is, at a time when the legal landscape was uncertain. And the creditor in *Joseph C. Sansone Co. v. Woodland St., LLC*, No. CV-20-6131647, 2022 WL 1179803 (Conn. Super. Ct. Apr. 12, 2022), used the common-law method to enforce a foreign default judgment because that is what Connecticut law requires. *See* Conn. Gen. Stat. § 52-605.

directive of § 15-352 that a foreign judgment should "have the same effect and be subject to the same procedures" as a D.C. judgment. A D.C. judgment's 12-year enforceable life is measured from the date when it can be executed after the original court decides and issues it. But the majority opinion would start the 12-years from the date of the purely administrative act of filing the judgment in D.C. (over which the creditors have total control), thereby extending the life of filed foreign judgments beyond the life of a D.C. judgment of the same age.

Take the facts of this case as an example. The "date when an execution [of HGA's California judgment] might [have] first be[en] issued thereon" under D.C. Code § 15-101(a) was the date that the judgment was issued in 2001. *See* Cal. Civ. Proc. Code § 683.010 (providing that a California court judgment is "enforceable . . . upon entry"). Starting the enforcement clock from the date of filing in the District of Columbia, however, gives the California judgment about five additional years of life beyond what a D.C. judgment issued on the same day would have had.[7]

---

[7] California does not appear to have an automatic 30-day stay like the District does under Super. Ct. Civ. R. 62(a), although it allows the execution of a money judgment to be stayed. *See, e.g.*, Cal. Civ. Proc. Code § 917.1 (requiring "an undertaking" to stay a money judgment pending appeal); *id.* § 697.040 (explaining the effect of such a stay on liens). Nothing in the record indicates that the issuing court in California stayed enforcement of the original 2001 judgment at issue in this case.

Moreover, under the majority opinion's rule, a creditor could conceivably wait until a foreign judgment was just about to expire in its originating jurisdiction and then, upon filing it in the District, get 12 additional years to enforce it.[8] The holder of a D.C. judgment does not possess equivalent power to decide when the enforcement clock starts running in the District.

But the most curious and unsettling result of my colleagues' interpretation of the language triggering the 12-year enforcement period—"the date when an execution might first be issued thereon"—to mean the filing date in the Superior Court Clerk's Office is that it appears to allow creditors to file and then enforce foreign judgments that are expired in their jurisdiction of origin. As discussed, the

---

[8] Dismissing this concern, my colleagues in the majority look to a Fourth Circuit case, *Wells Fargo Equipment Finance, Inc. v. Asterbadi*, 841 F.3d 237 (4th Cir. 2016), where the court addressed the argument that, under 28 U.S.C. § 1963, creditors with federal court judgments could, by filing them in different federal districts, restart the enforcement clock. *Ante* at 17-18. Setting aside that this federal statute is not motivated by the same constitutional concerns as the UEFJA, see *infra* Part II, the Fourth Circuit's rationale—that this filing process should be treated just like the more burdensome common-law procedure of bringing a new action to enforce a foreign judgment under which the clock restarts, *Asterbadi*, 841 F.3d at 246—is unpersuasive. As noted above, the D.C. UEFJA clearly distinguishes between the two mechanisms. Moreover, whereas the very cumbersomeness of the common-law procedure serves as a deterrent against abusing it to restart the enforcement clock, there is by design no comparable check on using the streamlined filing procedure to restart the enforcement clock.

filing process under D.C. § 15-532 is streamlined by design. A filer need only submit a form, authenticate that the judgment is real, and pay a filing fee; they have no obligation to confirm that the judgment is still live in the originating jurisdiction. *See* Super. Ct. Civ. R. 62-III(a); *see also Request to File a Foreign Judgment* (last updated Nov. 2009), https://www.dccourts.gov/sites/default/files/pdf-forms/Civil ActionsRequestToFileAForeignJudgment.pdf; https://perma.cc/24TF-WY3X. (requiring only basic information about the foreign case, the amount owed, confirmation of service on the debtor, and an authenticated judgment attached). Nor does the Superior Court Clerk's Office have any apparent obligation to screen for expired out-of-state judgments; if the required form requesting that the judgment be filed is completed, there would seem to be no reason to reject the filing.[9] *See id.*

A putative debtor who later sought to challenge the enforcement of an expired-when-filed foreign judgment would seemingly be without a substantive basis to

---

[9] Looking to case law from other jurisdictions, my colleagues in the majority suggest that D.C. Code § 12-307, which provides that "[a]n action upon a judgment or decree rendered in a[nother] State . . . is barred if by the laws of that jurisdiction, the action would there be barred and the judgment or decree would be incapable of being otherwise enforced there," could bar the filing of already expired judgments. *Ante* at 24. But by referring to an "action," the statute clearly contemplates the initiation of a civil suit, not merely the administrative filing procedure authorized under the D.C. UEFJA. D.C. Code § 12-307; *see also* Super. Ct. Civ. R. 3 ("A civil action is commenced by filing a complaint with the court.").

proceed under the majority opinion's conception of § 15-352 and § 15-101(a). As the majority opinion announces, the act of "filing . . . a foreign judgment triggers a new limitation period." *Ante* at 9. This means that, for the majority opinion, the date that a foreign judgment is filed with the Superior Court under § 15-352 *is* "the date when an execution might first be issued thereon" under § 15-101(a). There is no room in this interpretation to, post-filing, harken back to the issuance date of the judgment in its original jurisdiction because, for the purposes of enforcement in the District under § 15-101(a), the original judgment has disappeared. The only relevant date for calculating the 12 years is the filing date in Superior Court.

Given that the whole point of having a limitations period on the enforcement of judgments in D.C. courts is to guard against stale judgments,[10] I cannot agree with an interpretation of § 15-352 and § 15-101(a) that permits creditors to file and enforce expired foreign judgments in the District. Such an interpretation makes little sense—why would the District owe "full faith and credit," see *infra* Part II, to a judgment that, at the time of filing, the originating jurisdiction does not even view

---

[10] *Cf. Medhin v. Hailu*, 26 A.3d 307, 313 n.7 (D.C. 2011) ("The purpose of statutes of limitation is to bring repose and to bar efforts to enforce stale claims . . . [, which] protect[s] a potential defendant's interest in security . . . and in planning for the future without the uncertainty inherent in potential liability . . . ." (cleaned up)).

as enforceable?—and it certainly does not subject foreign judgments to the "same defenses" as D.C. judgments as § 15-352 requires.[11]

My colleagues in the majority respond that this enforcement-of-expired-judgments concern "is not raised by the facts of this case." *Ante* at 23. But statutory interpretation is a "holistic endeavor," *Tippett v. Daly*, 10 A.3d 1123, 1127 (D.C. 2010), in which we often consider "the potential consequences of adopting a given interpretation." *See Williams v. Kennedy*, 211 A.3d 1108, 1110 (D.C. 2019); *see*

---

[11] My colleagues in the majority claim, *ante* at 25-26, that my approach creates a problem of enforcing expired judgments.

To the extent my colleagues think that under my conception of D.C. law, a foreign judgment that is expired when filed could be enforced in the District, they are mistaken. To be sure, such a judgment could be filed—again there is no check on filing expired foreign judgments. But just as a putative debtor at the time of enforcement could challenge a D.C. judgment as expired by looking to the "date when an execution might first be issued thereon" in the District, they could likewise at the time of enforcement challenge a foreign judgment as expired before it was filed by looking to the "date when an execution might first be issued thereon" in the foreign jurisdiction. As discussed above, the majority opinion precludes such an argument because it holds that the "date when an execution might first be issued thereon" *is* the filing date.

To the extent my colleagues are challenging my conception of District law as somehow illogical because a foreign judgment with a less-than-12-year enforcement period in its originating jurisdiction would—if filed in the District before it expired—get the benefit of the District's 12-year statute of limitations, I see no incongruity. As discussed, by its plain language, D.C. Code § 15-352 affords putative debtors the "same defenses" to filed foreign judgments as might be raised to D.C. judgments, which includes the District's 12-year statute of limitations. And even my colleagues agree that we should apply the District's statute of limitations to a filed foreign judgment. We just disagree about when to start the clock.

*also id.* at 1114 ("[T]he reasonableness of a construction can often be tested by considering the consequences of a different one."). My colleagues also suggest that there might be some procedural mechanism for individuals to challenge the enforcement of an expired-but-filed foreign judgment, but as explained above, the majority opinion's holding deprives putative debtors of a substantive claim. Lastly, the fact that other states have construed their statutes to permit such challenges is irrelevant; the majority provides no explanation as to how the District's statutory scheme as construed in this opinion would allow someone in D.C. to challenge an expired-but-filed judgment.

## II. Legislative History and Purpose

While I would conclude that the plain language of § 15-352 and § 15-101(a) stands on its own, the legislative history and purpose of the D.C. UEFJA supports adhering to that plain-language reading. This history demonstrates that the central goal in the development of model legislation for recognizing foreign state court judgments, ultimately adopted by the District, was simply to provide a procedurally streamlined method for recognition of foreign judgments, a goal that my plain-language reading of § 15-352 and § 15-101(a) fulfills.

The D.C. UEFJA is a product of the Model Revised Uniform Enforcement of Foreign Judgments Act, which in turn has its foundation in the Full Faith and Credit Clause of the Constitution. The Full Faith and Credit Clause provides that "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State." U.S. Const. art IV, § 1. "[U]nder the Full Faith and Credit Clause . . . , a judgment properly authenticated and issued by a court having jurisdiction is entitled to the same degree of recognition in a sister state as would be afforded by the state of original rendition." *Nader v. Serody*, 43 A.3d 327, 332 (D.C. 2012) (internal quotation marks omitted). The clause simply ensures that the enforcement of a state court judgment is not geographically limited to the boundaries of that state, but it says nothing about the mechanics of that recognition. *See Sun Oil Co. v. Wortman*, 486 U.S. 717, 722 (1988) (holding that the Full Faith and Credit Clause allowed a state to impose its own procedural rules, including a statute of limitations, even where it had to consider another state's substantive law); *accord Teare v. Comm. on Admissions*, 566 A.2d 23, 28 (D.C. 1989) (holding that the Full Faith and Credit Clause allowed the District to use its own rules where they were a "matter of local policy, and not a judgment on the merits in a case or controversy").

The development over the years of the model statute itself acts as support for

the idea that the Full Faith and Credit Clause does not dictate any single procedure for enforcing foreign judgments. Historically, the common-law method preserved in § 15-356 was the only way to ensure conversion of a judgment issued by one state into a new judgment of the state in which enforcement was sought, thereby restarting the statute of limitations clock as a new judgment typically would. *Ante* at 13; Revised Uniform Enforcement of Foreign Judgments Act, prefatory note at 3 (National Conference of Commissioners on Uniform State Law 1964). This method satisfied the mandate of the Full Faith and Credit Clause, but it was procedurally demanding in a way that the Clause did not require. *See* Proceedings in Committee of the Whole Revised Uniform Enforcement of Foreign Judgments Act, at 15 (1964) (observing that "[i]f [a state] prefer[s] to do so, [it] can tie up [its] own courts" by requiring creditors to prove the existence of a foreign judgment in a plenary action, but concluding this was not necessary). The Uniform Law Commission[12] attempted to address this problem with the 1948 Uniform Enforcement of Foreign Judgments Act ("UEFJA"). The goal of the UEFJA was to promote efficiency and reduce the burden on state courts by "provid[ing] a summary judgment procedure for actions

---

[12] The Uniform Law Commission is the current name of the former National Conference of Commissioners on Uniform State Law. *See* Uniform Law Commission, *About Us*, Uniform Law Commission, https://www.uniformlaws.org/aboutulc/overview; https://perma.cc/3NH9-REBD (last visited Nov. 4, 2022).

on foreign judgments," in lieu of "a second full scale trial." Revised Uniform Enforcement of Foreign Judgments Act, prefatory note at 3. Because that goal was not adequately realized with the 1948 version's summary judgment procedure, however, the Commission went back to the drawing board.

The Commission then came up with the Revised Uniform Enforcement of Foreign Judgments Act ("RUEFJA"), which adopted a filing procedure for state court judgments. At a 1963 meeting regarding this proposal, the Commission discussed the fact that some states, by various means, afforded more than full faith and credit to out-of-state judgments, but the chairman of the committee that had drafted the model legislation explained that "the purpose of this Act is to provide a uniform means of doing what we are absolutely required to do by the Constitution of the United States. That is the only purpose of it." Proceedings in Committee of the Whole Revised Uniform Enforcement of Foreign Judgments Act, at 6, 18-19 (1963). Similarly, at a 1964 meeting, the Commission's focus was to facilitate the enforceability of state court judgments beyond state court lines via the proposed procedure of filing the foreign judgment with the clerk's office of another state court.[13] *See generally* Proceedings in Committee of the Whole Revised Uniform

---

[13] The Committee clarified that after a foreign court judgment was filed with the clerk's office of the state in which the creditor sought to enforce the judgment,

Enforcement of Foreign Judgments Act (1964). Although due process concerns were raised about authorizing such a summary procedure, the chairman of the committee that had drafted the model legislation explained that debtors would have already received due process in the originating state, that "the problem has been with our mobile population absconding," and that the aim was "to protect people who have litigated their claims once" from having to litigate them a second time in a different jurisdiction. *Id.* at 15; *see also id.* at 29 ("We know that our people are moving more than they have ever moved before."); *id.* at 41-42 ("[W]hat we are interested in is protecting someone against the absconding debtor who has moved on to another state . . . ."). In short, "[a]ll [the Commission] want[ed] to do [wa]s to give [a creditor] the same rights that [they] would have in the state where the judgment was issued." *Id.* at 28.

The District adopted the RUEFJA in response to a Judiciary Committee Report explaining that (1) "Article IV, Section 1 of the Constitution of the United States requires each state to give full faith and credit to the official acts and judgments of every other state"; (2) the RUEFJA had been drafted to address the

---

the statute of limitations of that state would apply. Proceedings in Committee of the Whole Revised Uniform Enforcement of Foreign Judgments Act, at 7 (1964). But it did not indicate that the act of filing the foreign court judgment would restart the clock for statute of limitations purposes. *See id.* at 6-7.

"problem of [this clause's] implementation"; (3) as drafted the D.C. UEFJA was "almost identical" to the model statute; (4) the purpose of the D.C. UEFJA was "to provide an expeditious and simple procedure to enforce foreign judgments in courts of the District of Columbia"; and (5) "[t]he act of filing the foreign judgment [in Superior Court] gives it the effect of being a judgment of" the Superior Court, "thereby eliminating the need for another trial." The Uniform Enforcement of Foreign Judgments Act of 1990, D.C. Council, Report on Bill 8-56 at 2, 4 (June 20, 1990). As with the discussion of the RUEFJA before the Uniform Law Commission, the discussion of the D.C. UEFJA before the Council contains no mention of a desire to give new temporal life to foreign judgments with the adoption of a filing procedure. Instead the sole aim appears to have been to provide a procedurally streamlined mechanism to facilitate compliance with the geographic mandate of the Full Faith and Credit Clause.

## III.    Other Courts' Decisions

Where the plain-language meaning of § 15-352 and § 15-101(a) is clear and supported by the legislative history and purpose of the D.C. UEFJA, I see no utility in looking to varying state court decisions interpreting their respective versions of the UEFJA or federal appellate court decisions interpreting a different statute

entirely. *See Peoples Drug Stores, Inc. v. Dist. of Columbia*, 470 A.2d 751, 755 (D.C. 1983) ("[A] court should look beyond the ordinary meaning of the words of a statute only where there are persuasive reasons for doing so." (internal quotation marks omitted)).

While I agree with my colleagues that we must take seriously the Council's directive to "interpret[] and construe[]" the D.C. UEFJA "to effectuate its general purpose to make uniform the law of jurisdictions that enact it," D.C. Code § 15-357, I disagree that this directive has much if any force in this case. Our court cannot singlehandedly create uniformity where there is none. To the extent state courts have interpreted their UEFJA statutes and addressed (mostly cursorily) the temporal question at issue in this case, uniformity has been elusive. As the majority opinion acknowledges, some state supreme courts have concluded that filing a state court judgment in another state does not create a new judgment in the second state or restart the statute of limitations clock; others have concluded that it does. *See ante* at 9-10. My colleagues in the majority note that the weight of authority supports their interpretation of § 15-352 and § 15-101(a). But even assuming § 15-357 requires us to consider the weight of authority on a disputed issue, I disagree that such outside authority can countermand the plain text of our statutes.

As for the federal appellate cases to which the majority opinion alludes, *ante* at 10-11, I disagree that they have any bearing on our analysis. First, these cases are interpreting 28 U.S.C. § 1963, which provides a procedural mechanism for registering in one federal district court a judgment issued in another, does not authorize the registration of a state court judgment in federal court, and has nothing to do with the Full Faith and Credit Clause of the Constitution. *Id.* (authorizing registration of "[a] judgment in an action for the recovery of money or property entered in any [listed federal] court"; giving that judgment "the same effect as a judgment of the district court of the district where registered"; and authorizing "enforce[ment] in like manner"); *see Atkinson v. Kestell*, 954 F. Supp. 14, 15 n.2 (D.D.C. 1997), *aff'd sub nom. Atkinson v. Inter-Am. Dev. Bank*, 156 F.3d 1335 (D.C. Cir. 1998), *as amended* (Oct. 28, 1998) (explaining that state court judgments may not be registered in federal court pursuant to 28 U.S.C. § 1963). Federal courts, of course, are all part of the same judicial system, *see* U.S. Const. art. III, § 1, and need no special constitutional command to give each other's judgments full faith and credit, *see Harrah's Club v. Van Blitter*, 902 F.2d 774, 777 (9th Cir. 1990) ("[T]he Full Faith and Credit Clause does not apply to successive actions in federal courts . . . ."). Second, although the procedural mechanism set forth in 28 U.S.C. § 1963 was the inspiration for the streamlined procedure adopted in the RUEFJA, *ante* at 10, the federal appellate decisions interpreting 28 U.S.C. § 1963 in a manner that the

majority opinion deems supportive of its analysis all post-date the issuance of the RUEFJA and thus could not have been considered even sub silentio by its drafters.[14] Third, the D.C. Council, when enacting the D.C. UEFJA, made no mention of either 28 U.S.C. § 1963 or the cases interpreting its registration procedure as creating new judgments.

## IV.    Other Considerations

The majority opinion concludes with an array of policy arguments explaining why its analysis of § 15-352 and § 15-101(a) is not unreasonable.  *Ante* at 16-18. Policy arguments identified by this court cannot override the plain text that is presumed to capture the legislature's intent.  *W. End Tenants Ass'n v. George Wash.*

---

[14] The Eighth Circuit published its frequently cited decision holding that registration of a federal court judgment in a district in another state created a new judgment, *Stanford v. Utley*, 341 F.2d 265 (8th Cir. 1965), a year after the Uniform Law Commission approved the RUEFJA.  The Eighth Circuit addressed this question solely for the purpose of determining which state's statute of limitations controlled in a diversity suit.  *Id*. at 268.  Calculating whether registration restarted the clock for statute of limitations purposes was unnecessary, since the judgment in question had been registered the day after it was issued.  *Id*. at 266.  Federal appellate courts subsequently relied on *Stanford* to conclude that the statute of limitations of the state in which the judgment is registered runs from the date of registration.  The majority opinion cites to one such decision, *Asterbadi,* 841 F.3d 237, but it was issued years after both the RUEFJA and D.C. UEFJA were drafted.  The Fourth Circuit in that case also resisted an argument that it should apply UEFJA principles to interpret § 1963.  *Id.* at 245-46.

*Univ.*, 640 A.2d 718, 726 (D.C. 1994) ("[T]he intent of the legislature is to be found in the language which it has used" and "[a]bsent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive."). Even so, there is a strong policy argument to support reading the plain text of these statutes as written: the District's interest in protecting its residents and property owners from stale judgments.

Although this case does not present the worst-case scenario of a creditor seeking to revive an expired foreign judgment by filing it in the District, it does raise concerns about creditors sitting on their rights. HGA's California judgment against Mr. Wilson is from 2001 and it appears that, post-filing in D.C. in 2006, HGA did in fact seek to enforce that judgment. According to an earlier related appeal, the Superior Court authorized the U.S. Marshal to seize and sell Mr. Wilson's property to pay the judgment. *Wilson v. Holt Graphic Arts, Inc.*, 981 A.2d 616, 617 & n.2 (D.C. 2009). The forced sale did not occur, however. HGA provided no explanation for this nonevent in its 2018 complaint initiating this case; it did not even acknowledge that it had successfully obtained authority to seize Mr. Wilson's property but then failed to actually seize it.

\*        \*        \*

For the reasons set forth above, I respectfully dissent.